569 A.2d 402

**WASHINGTON TOWNSHIP MUNICIPAL AUTHORITY, Appellant,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1989.

Decided Jan. 29, 1990.

Petition for Allowance of Appeal
Denied Aug. 1, 1990.

**38**

Jan G. Sulcove, Black and Davison, Chambersburg, for appellant.

John B. Neurohr, with him, James L. Crawford, Harrisburg, for appellee.

Robert M. Baptiste, with him, Christy Concannon, Baptiste & Wilder, P.C., for intervenor, International Broth. of Teamsters, Local 32.

Before CRAIG, McGINLEY and SMITH, JJ.

McGINLEY, Judge.

Washington Township Municipal Authority (Authority) appeals an order of the Court of Common Pleas of Franklin County (court of common pleas) affirming the decision of the Pennsylvania Labor Relations Board (Board) declaring the International Brotherhood of Teamsters, Local Union No. 32 (Teamsters), the exclusive representative of the Authority's full-time and regular part-time employees. We affirm.

On October 20, 1986, the Teamsters filed with the Board a petition for representation alleging that it represents thirty percent or more of the employees of the Authority. The Teamsters sought a hearing and an order for an election pursuant to the Public Employe Relations Act (PERA).[1] On February 6, 1987, following a hearing, the hearing examiner ordered the Authority to submit an eligibility list.

This order contained the following relevant conclusions:

4. That the unit appropriate for the purpose of collective bargaining is a subdivision of the employer unit com-

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

prised of all full-time and regular part-time nonprofessional employes including but not limited to Bookkeepers/Accountants, Billing Clerks, Office Workers, Water Operators, Laboratory Technicians, Laborers and Apprentice Waste Water Operators; and excluding management level employes, supervisors, first level supervisors, confidential employes and guards as defined in the Act.

5. That the Executive Director (Mr. Barnhart) is a "management level employe" within the meaning of Section 301(16) of the Act.

6. That the Waste Water Treatment Supervisor (Mr. Dragas) and the Chief Water Operator (Mr. Kampstra) are "supervisors" within the meaning of Section 301(6) of the Act.

7. That the Bookkeeper/Accountant (Ms. Cool) and the Billing Clerk (Ms. Shank) are not "confidential employes" within the meaning of Section 301(13) of the Act.

8. That the Office Worker (Ms. Schanuaman) is a "regular part-time employe."

Reproduced Record (R.R.) at 44a. The order further indicated that the eligibility list should comply with these conclusions. R.R. at 45a.

Subsequently, on February 26, 1987, a Board representative issued an order scheduling an election by secret ballot for March 20, 1987. The election was conducted by an election officer assigned by the Board. On March 25, 1987, the Authority filed objections to the Board's conduct of the election. After a hearing, these objections were dismissed. On October 14, 1987, a Board representative issued a Nisi Order of Certification rendering the Teamsters the exclusive representative of the employees. The Authority filed exceptions to the Nisi Order which the Board dismissed by a final order on February 12, 1988. The Authority sought review by the court of common pleas which affirmed the Board. The Authority then filed the present appeal.

■ Our scope of review of a bargaining unit determination made by the Board is limited to ascertaining whether

the findings of fact are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable. *Pennsylvania Labor Relations Board v. Venango/Clarion Mental Health Care Center, Inc.*, 52 Pa. Commonwealth Ct. 341, 344, 415 A.2d 1259, 1261 (1980). Given our limited scope of review, we must affirm the Board's final order.

■ The Authority first contends that a bargaining unit consisting of all regular full- and part-time clerical and blue collar personnel is inappropriate because there is no identifiable community of interest. However, it is well-settled that full- and part-time employees can share an identifiable community of interest. *Albert Einstein Medical Center v. Pennsylvania Labor Relations Board*, 17 Pa. Commonwealth Ct. 91, 330 A.2d 264 (1975). Further, an identifiable community of interest can exist despite "some differences in requirements of experience, skills and education." *Western Psychiatric Institute and Clinic v. Pennsylvania Labor Relations Board*, 16 Pa. Commonwealth Ct. 204, 209, 330 A.2d 257, 260 (1974). This minimizes over-fragmentization of bargaining units. Moreover, as the court of common pleas noted, "The slight differences that exist among the employees' wages, hours and duties ... do not negate the abundance of fringe benefits and working conditions which [these] employees share." (R.R. at 12a.)

■ The Authority's second contention is that the certified unit is inappropriate because it includes the confidential position of accountant/bookkeeper. Section 301(13) of PERA[2] defines a confidential employee as one "who works: (i) in the personnel offices of the public employer and has access to information subject to use by the public employer in collective bargaining; or (ii) in a close continuing relationship with public officers or representatives associated with collective bargaining on behalf of the employer." The Authority contends that the accountant/bookkeeper is a confidential employee because she prepares budgets dealing

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.301(13).

with wage and benefit allowances, compiles statistics on projected revenues and expenses, has access to personnel files and has a close continuing relationship with the Authority's manager.

The hearing examiner and the Board found that the accountant/bookkeeper is not a confidential employee within the meaning of Section 301(13) of PERA because the Authority had never engaged in collective bargaining. The Board correctly noted that an exclusion based upon speculative job duties would enable employers to exclude all employees from the onset. The hearing examiner appropriately commented that, in the future, if a problem develops and the accountant/bookkeeper becomes privy to information concerning the Authority's collective bargaining strategy, the Authority can then seek a unit clarification from the Board. This alternative is much less restrictive than excluding the accountant/bookkeeper from the unit before there has been any collective bargaining by the Authority.

The Authority next argues that the inclusion of the part-time clerical employee in the bargaining unit is inappropriate because she is a casual employee with only a limited interest in the employment relationship. The Board contends that part-time employees share a sufficient community of interest with full-time employees to be included in the same bargaining unit when the part-time employees show a regularity of employment with consistent and repeated service. The hearing examiner found that the part-time clerical employee herein worked an average of fifteen hours per week throughout 1986.[3] The record supports the finding

3. The hearing examiner states in Finding of Fact No. 14:
 14. That the Office Worker (Ms. Schaunaman) was hired on December 13, 1985. She works whenever the other office employes are too busy to handle the workload. She is normally scheduled one week in advance. She worked 0 hours during the week ending July 4, 1986, 40 during the week ending July 11, 1986, 40 during the week ending July 18, 1986, 40 during the week ending July 25, 1986, 32 during the week ending August 1, 1986, 16 during the week ending August 8, 1986, 11.5 during the week ending August 15, 1986, 8 during the week ending August 22, 1986, 5 during the week ending August 29, 1986, 0 during the week ending September 5, 1986, 17.5

that the office worker shares an identifiable community of interest with the other employees and is a regular part-time employee.

■ The Authority also contends that the Board improperly refused to permit the Authority to designate Gerald Zeigler, a code enforcement officer for Washington Township, as its watcher. Two days prior to the election the Authority notified a Board agent that it planned to have Mr. Zeigler act as its watcher. Pursuant to section 605(2) of PERA[4] and the Board's regulations,[5] the Board agent objected to the Authority's proposed use of the code enforcement officer because of his status as a management level employee. The Board has routinely prohibited management level employees from acting as watchers in representation elections so that the Board may conduct these elections free from the possible coercive effect of the presence of an individual closely associated with management. Despite two days notice of Mr. Ziegler's rejection, the Authority

during the week ending September 12, 1986, 15.5 during the week ending September 19, 1986, 0 during the week ending September 26, 1986, 0 during the week ending October 3, 1986, 24.5 during the week ending October 10, 1986, 4 during the week ending October 17, 1986, 9 during the week ending October 24, 1986, 11 during the week ending October 31, 1986, 13 during the week ending November 7, 1986, 4 during the week ending November 14, 1986, 6.5 during the week ending November 21, 1986, and 27 during the week ending December 5, 1986. During the first six months of 1986, she worked a schedule similar to her schedule from August through November 1986.

Order Directing Submission of Eligibility List, February 6, 1987, at 3.

4. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.605(2).

5. Section 95.52 of the Board's rules and regulations provides as follows:

Each party to the election shall be entitled to be represented by one watcher at each polling place or by such additional watchers as the parties may agree, subject to such limitations as the Board or its duly authorized agent may prescribe. *Watchers for all parties shall be employees eligible to vote.* However, in the event the employer is unable to find an individual on the list of eligible voters who is willing to serve as a watcher, he may choose a nonsupervisory or other appropriate person.

34 Pa.Code § 95.52 (emphasis added).

made no further effort to find an alternate watcher for the election. The Authority's contention is without merit.

 Finally, the Teamsters contend that, pursuant to Pa.R.A.P. 2744, they are entitled to an award of costs, attorneys fees and delay damages since the Authority filed a frivolous appeal. An appeal is frivolous when the realistic chances of ultimate success are slight and continuation of the contest is unreasonable. *Langmaid L. H. Association Appeal*, 77 Pa. Commonwealth Ct. 53, 465 A.2d 72 (1983). We conclude that the Authority had a reasonable legal basis for challenging the bargaining unit determination made by the Board and affirmed by the court of common pleas. Therefore we need not remand for any determination of costs and attorneys fees.[6]

The order of the court of common pleas is affirmed.

## ORDER

AND NOW, this 29th day of January, 1990, the order of the Court of Common Pleas of Franklin County affirming the final order of the Pennsylvania Labor Relations Board in the above-captioned case is hereby affirmed.

---

**6.** Initially, the Authority also challenged whether the billing clerk was entitled to confidential status and whether the Board erred by canvassing ballots outside the presence of the Authority's Executive Director, Mr. Barnhart. Because the court of common pleas found that these challenges were withdrawn, the Authority has waived the right to raise them in this Court. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974). Consequently, we will not address these issues.