**FRATERNAL ORDER OF POLICE, CONFERENCE OF PENNSYLVANIA LIQUOR CONTROL BOARD LODGES, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided May 28, 1997.

Reargument Denied July 17, 1997.

Matthew E. Forbes, Harrisburg, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

Steven O. Newhouse, Assistant Counsel, Harrisburg, for intervenors, PA State Police and PA Liquor Control Board.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Fraternal Order of Police, Conference of Pennsylvania Liquor Control Board Lodges (FOP) appeals from an order of the Pennsylvania Labor Relations Board (Board) which dismissed FOP's exceptions and made final a hearing examiner's proposed decision and order denying FOP's Petition for Unit Clarification. We reverse.

On April 21, 1995, FOP filed a Petition for Unit Clarification with the Board, seeking to split an existing bargaining unit into two separate units. By letter dated May 1, 1995, the Secretary of the Board dismissed the petition and FOP filed timely exceptions. On July 7, 1995, the Board issued an order remanding the matter to the Secretary for further proceedings. A hearing on the petition was held on November 21, 1995.

The following facts are summarized from the hearing examiner's findings and are not contested. In 1971, FOP was certified as the exclusive representative of a unit of Pennsylvania Liquor Control Board (LCB) employees. The unit consisted of employees classified as Enforcement Officers I and II and Enforcement Officer Trainees. These employees were under the direction and supervision of the LCB, and their duties included both enforcement and licensing functions.

As a result of legislation passed in 1987, the function of enforcing liquor laws was transferred to the Pennsylvania State Police. The licensing functions remained with the LCB. The LCB employees were given the choice to remain employed with the LCB as licensing analysts or to become employed with the State Police as liquor law enforcement officers.[1]

---

1. The Commonwealth of Pennsylvania, Office of Administration, filed a notice of intervention pursuant to Pa.R.A.P. 1531 on behalf of the Pennsylvania State Police and the Pennsylvania Liquor Control Board.

Approximately 148 enforcement officers are employed with the State Police. They receive extensive training in the crimes code, the use of deadly force and firearms, self-defense and first-aid at the State Police Academy. The enforcement officers are bound by all State Police regulations, including disciplinary regulations. They are also held to the same physical and educational standards as are State Troopers.

The enforcement officers often work undercover, investigating gambling, underage drinking, hours of operation violations and other crimes, including homicides. The enforcement officers conduct raids, make arrests and seize property. They are issued raid gear, including a gun and a bullet-proof vest. These officers work closely with local police, State Troopers, the Internal Revenue Service, the Federal Bureau of Investigation and United States Marshals, and handle prosecutions from arrests through disposition.

Approximately 46 licensing analysts are employed by the LCB. The job functions of licensing analysts involve regulatory work, including auditing, to ensure compliance with the Liquor Code [2] and related laws and regulations. The licensing analysts are not authorized to engage in criminal investigations or prosecutions. They do not have authority to carry firearms or make arrests. They do not participate in searches of licensed establishments to determine if there are any violations of the Liquor Code, nor do they perform any of the other duties performed by enforcement officers. The licensing analysts are not trained by the State Police and are not subject to weight, eyesight or agility requirements. Approximately eighty-five per cent of the licensing analysts work from their homes.

Although the hearing examiner's findings detailed the differences between the job functions and work conditions of the two groups, the hearing examiner concluded that

"[g]iven the Board's steadfast adherence to the broad-based bargaining unit policy, the FOP's request ... must be denied." (Hearing Examiner's Decision, p. 5.)

On appeal, the Board issued additional and amended findings of fact. The Board found that, under the parties' collective bargaining agreement, both groups have substantially similar benefits and are subject to identical grievance practices after "step 3." The Board also found that the enforcement officers and licensing analysts work the same number of hours each day and are paid under the same Commonwealth pay plan with the same pay ranges. The Board noted that FOP has represented both groups fairly since 1971 and concluded that the issue of bargaining history weighs in favor of maintaining a combined unit.

The Board determined that the differences in job functions cited by FOP are not so significant as to destroy an identifiable community of interest based upon bargaining history, wages, hours and benefits. Accordingly, the Board dismissed FOP's exceptions and made final the hearing examiner's denial of FOP's petition.

On appeal to this Court,[3] FOP argues that the Board's decision is contrary to law and is not supported by substantial evidence.

The present action is governed by Section 604 of the Public Employees Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.604, which provides in part as follows:

> The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:
>
> (1) Take into consideration but shall not be limited to the following:

---

**2.** Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—9–902.

**3.** Our scope of review of a bargaining unit determination made by the Board is limited to determining whether the findings of fact are supported by substantial evidence and whether the

conclusions drawn from those fact are reasonable. *Washington Township Municipal Authority v. Pennsylvania Labor Relations Board*, 131 Pa. Cmwlth. 36, 569 A.2d 402 (1990), *petition for allowance of appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990).

(i) public employees must have an identifiable community of interest, and

(ii) the effects of over-fragmentization.

Section 604 of PERA mandates a consideration of whether a community of interest exists among the members of a group. FOP argues that the absence of a community of interest is evident from the record. We agree.

The following cases illustrate the numerous factors the Board may properly consider in determining whether an identifiable community of interest exists. In *Allegheny General Hospital v. Pennsylvania Labor Relations Board,* 14 Pa.Cmwlth. 381, 322 A.2d 793 (1974), the Board approved a bargaining unit of 61 maintenance employees of the hospital. The hospital argued for a broader based unit of the total of 162 housekeeping employees. The court upheld the certification, holding that the Board properly considered the following factors in rejecting the inclusion of housekeeping employees with the unit of maintenance workers: the employees' skills, duties, areas of work, working conditions, supervision, hours, grievance procedures, pay scales, trade requirements, the interchange of employees, and employees' desires. The court reviewed the Board's findings that the work areas and conditions of employment were different, there was no interchange of employees, there were different supervisory structures, different lower level grievance procedures, different shift hours and different pay scales. The court concluded that there was no identifiable community of interest and, therefore, no basis existed to bargain collectively for wages, hours and other terms and conditions of employment.

In *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa.Cmwlth. 525, 441 A.2d 470 (1982), *affirmed in part and reversed in part,* 502 Pa. 7, 463 A.2d 409 (1983), the court affirmed the Board's certification of a bargaining unit comprised of approximately 150 part-time and full-time members of the Capitol Police. The Capitol Police are employed by the Department of General Services and work in the Harrisburg Capitol Complex and the state office buildings in Philadelphia, Pittsburgh and Scranton. Although their jurisdiction is limited, the officers function as a police unit. They are required to remove trespassers and vagrants from Commonwealth property, by force if necessary. The officers receive firearms training; they issue citations for parking on Commonwealth property, are responsible for traffic control and may cite for moving violations which occur on the Capitol Complex streets. The officers investigate automobile accidents within their jurisdiction and may be dispatched outside their jurisdiction in the event of emergency.

The Commonwealth had argued for a statewide unit of all employees classified as "police officers," rather than a unit limited to the Capitol Police. However, the court noted that "police officers" are employed by at least ten Commonwealth agencies, that each agency exercises exclusive control over its personnel and promulgates its own policy. The court also noted that Capitol Police do not have supervisory authority over police officers in other agencies. The court upheld the Board's determination that the Capitol Police share a separate community of interest apart from police officers employed by other Commonwealth agencies.

■ "The purpose of a unit clarification procedure under the PERA is to determine whether certain job classifications are properly included in a bargaining unit, based on the actual functions of the job." *School District of the Township of Millcreek v. Millcreek Education Association,* 64 Pa.Cmwlth. 389, 440 A.2d 673 at 675 (1982). In the present case, the hearing examiner's findings reflect significant differences in the job functions of the two groups. The two groups are employed by separate Commonwealth agencies, each with its own policies and regulations. Their work sites, environments, and work conditions are completely dissimilar. Their first three lower level grievance procedures are different. There is no interchange of employees and neither group has supervisory authority over the other. The actual job functions of each group are completely different. The only things shared by the groups are a bargaining history and wages and benefits; however, the bargaining histo-

ry and resulting benefits stem from the fact that both groups initially had all other factors of employment in common.

 The Board asserts that its conclusion that an identifiable community of interest exits is supported by findings that both groups are paid on the same salary schedule under the same pay ranges, work the same number of hours per day, and enjoy substantially the same benefits. We conclude that it was not reasonable for the Board to rely only on those common conditions of employment that presently exist because the groups once shared job functions and all other conditions of employment. The Board gave more weight to these factors than to those which involve the actual functions of the job, and the dissimilarities in job functions and other conditions of employment are both numerous and significant.

 The Board argues that it is required by Section 604 of PERA to consider the effects of over-fragmentization. We recognize the importance of the legislature's requirement that the dangerous effects of over-fragmentization be considered by the Board. However, while Section 604 mandates a consideration of community of interest, the effects of over-fragmentization cannot be considered once it is determined that there is no community of interest. *Amalgamated Transit Union v. Pennsylvania Labor Relations Board,* 92 Pa.Cmwlth. 144, 498 A.2d 485 (1985).

The Board also argues that it is entitled to deference in resolving matters of bargaining unit determinations. As previously indicated, this court must affirm the Board's order where the findings of fact are supported by substantial evidence and the conclusions drawn from those facts are reasonable. Having determined that the Board's conclusion is not reasonable under the facts presented, we reverse the Board's decision.

### ORDER

NOW, May 28, 1997, the order of the Pennsylvania Labor Relations Board, dated July 24, 1996, at Case No. PERA–U–95–213–E (PERA–R–1083–C), is reversed.