735 A.2d 96

FRATERNAL ORDER OF POLICE, Conference of
Pennsylvania Liquor Control Board Lodges

v.

PENNSYLVANIA LABOR RELATIONS BOARD,
Commonwealth of Pennsylvania Office of
Administration, Intervenor.

Appeal of Commonwealth of Pennsylvania
Office of Administration, Intervenor.

Fraternal Order of Police, Conference of Pennsylvania
Liquor Control Board Lodges, Appellee,

v.

Pennsylvania Labor Relations Board, Appellant.

Commonwealth of Pennsylvania Office
of Administration, Intervenor.

Supreme Court of Pennsylvania.

Argued Nov. 18, 1998.

Decided July 22, 1999.

Reargument Denied Nov. 8, 1999.

John B. Neurohr, James L. Crawford, Harrisburg, for PA Labor Relations Board.

Gary M. Lightman, Harrisburg, for Fraternal Order of Police.

Paul A. Tufano, General Counsel, for Office of General Counsel.

Frank A. Fisher, Jr., Chief Counsel, Steven O. Newhouse, Assistant Counsel, for Office of Administration, Intervenor.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

The Pennsylvania Labor Relations Board (PLRB) appeals an Order of the Commonwealth Court that reversed an Order of the PLRB denying a Petition for Unit Clarification filed by the Fraternal Order of Police (FOP). We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 1971, the FOP was certified as the exclusive bargaining representative for a unit of Pennsylvania Liquor Control Board (LCB) employees. At that time, the LCB was responsible for both liquor licensing functions and enforcement of liquor laws. In 1987, however, the legislature enacted legislation that transferred liquor law enforcement to the Pennsylvania State Police, and the LCB employees were given a choice of which agency to join. Those that chose to join the State Police became liquor enforcement officers (enforcement officers), and those that chose to remain with the LCB became liquor-licensing analysts (licensing analysts).

Currently, the State Police employs approximately 148 enforcement officers, whose duties include conducting undercover investigations, executing raids, and making arrests. The enforcement officers receive firearms training, are issued firearms, and are subject to the same physical and educational standards that are required of State Troopers. The LCB currently employs approximately forty-six licensing analysts, whose duties include auditing and other regulatory work. The licensing analysts do not participate in criminal investigations, raids, or other enforcement activity, they do not carry firearms, and they are not subject to State Police physical requirements. Most of the licensing analysts work from their homes.

Notwithstanding the division of job functions in 1987, the enforcement officers and the licensing analysts remained in a single bargaining unit. Approximately eight years later, on April 21, 1995, the FOP filed with the PLRB a Petition for Unit Clarification, alleging that the two groups of employees did not have an "identifiable community of interest" as required by Section 604 of the Public Employees Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.604.[1] Thus, the FOP sought to split the bargaining unit into two separate units—one for enforcement officers, and one for licensing analysts.

A PLRB Hearing Examiner held a hearing, and on March 13, 1996 issued a Proposed Decision and Order recommending that the Petition for Unit Clarification be denied. The Hearing Examiner concluded that, "[g]iven the [PLRB's] steadfast adherence to the broad-based bargaining unit policy, the FOP's request to create two separate units, one for each position, must be rejected. The positions are not so divergent

---

1. Section 604 of PERA provides that:
 The [PLRB] shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the [PLRB] shall:
 (1) Take into consideration but shall not be limited to the following:
 (i) public employees must have an identifiable community of interest, and
 (ii) the effects of over-fragmentization.

in the community of interest analysis to warrant a conclusion that no community of interest exists." The FOP filed exceptions to the Proposed Decision and Order, and on July 24, 1996, the PLRB issued a Final Order denying the Petition for Unit Clarification, holding that factors common to both positions—including wage scales, hours and benefits, and grievance procedures, as well as bargaining history—outweighed the differences in job functions, "which ... are not so significant as to destroy the identifiable community of interest" between the two groups of employees.

The FOP appealed to the Commonwealth Court, and in a reported Opinion without dissent, the court reversed the Order of the PLRB. *Fraternal Order of Police, Conference of Pennsylvania Liquor Control Board Lodges v. PLRB,* 695 A.2d 926 (Pa.Cmwlth.1997). The Commonwealth Court reviewed the decision of the PLRB to determine "whether the findings of fact are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable;" *id.* at 928, n. 3 (citing *Washington Township Municipal Authority v. PLRB,* 131 Pa.Cmwlth. 36, 569 A.2d 402 (1990), *alloc. denied,* 525 Pa. 652, 581 A.2d 577 (1990)), and concluded that:

it was not reasonable for the [PLRB] to rely only on those common conditions of employment that presently exist because the groups once shared job functions and all other conditions of employment. The [PLRB] gave more weight to these factors than to those which involve the actual functions of the job, and the dissimilarities in job functions and other conditions of employment are both numerous and significant.

*Id.* at 930. The PLRB then filed a Petition for Allowance of Appeal, which we granted, raising two issues: (1) whether the Commonwealth Court applied the proper scope of review of the PLRB's bargaining unit determination; and (2) whether the Commonwealth Court erred in holding that the enforcement officers and the licensing analysts do not have an identifiable community of interest.

## DISCUSSION

### Issue One—Scope of Review

For many years, the Commonwealth Court has held that its scope of review of a PLRB bargaining unit determination encompasses the assessment of two factors: (1) whether the PLRB's findings of fact are supported by substantial competent evidence; and (2) whether the legal conclusions drawn from those facts are reasonable and not arbitrary or capricious. *See, e.g., School District of Philadelphia v. PLRB,* 719 A.2d 835 (Pa.Cmwlth.1998); *Fraternal Order of Police, supra; Washington Township Municipal Authority v. PLRB,* 131 Pa.Cmwlth. 36, 569 A.2d 402 (1990), *alloc. denied,* 525 Pa. 652, 581 A.2d 577 (1990); *Amalgamated Transit Union, Local No. 89 v. PLRB,* 92 Pa.Cmwlth. 144, 498 A.2d 485 (1985); *School District of the Township of Millcreek v. Millcreek Education Association,* 64 Pa.Cmwlth. 389, 440 A.2d 673 (1982); *PLRB v. Venango/Clarion Mental Health Center, Inc.,* 52 Pa.Cmwlth. 341, 415 A.2d 1259 (1980); *Albert Einstein Medical Center, Northern Division v. PLRB,* 30 Pa.Cmwlth. 613, 374 A.2d 761 (1977); *Western Psychiatric Institute v. PLRB,* 16 Pa. Cmwlth. 204, 330 A.2d 257 (1974). Notwithstanding this long line of cases, the PLRB, relying primarily on this Court's decision in *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986), argues that the prevailing standard is too broad, and that the Commonwealth Court should be limited to considering only the first factor, whether the factual findings of the PLRB are supported by substantial evidence.

In *McGovern,* the decedent's estate asked the State Employees' Retirement Board (SERB) to review the amount payable pursuant to the decedent's retirement plan, arguing that the decedent was mentally incompetent when he executed the application for retirement benefits. After taking testimony from the decedent's family, friends, and physician, and from the retirement counselor who dealt with the decedent, a hearing officer concluded that the decedent was mentally competent when he executed the application for retirement

benefits. The SERB affirmed the hearing officer's decision, and the estate appealed to the Commonwealth Court. The court held that its scope of review was "to determine whether the [SERB's] findings of fact are consistent with each other and with its conclusions of law, and can be sustained without a capricious disregard of the evidence," and concluded that SERB's factual findings could not be sustained without capriciously disregarding evidence of the decedent's incapacity. *McGovern*, 512 Pa. at 381–82, 517 A.2d at 525.

This Court subsequently granted allocatur "to examine whether Commonwealth Court applied the appropriate standard of review of the [SERB's] findings of fact . . . ," and found that the Commonwealth Court had erred. We held that in appeals from Commonwealth agencies, "[t]he proper standard is that articulated in Section 704 of the Administrative Agency Law," 2 Pa.C.S. § 704, which provides as follows:

> After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

*Id.* Because the decedent's estate did not allege any procedural error or violation of constitutional rights, we limited our review in *McGovern* to determining "whether the agency's adjudication is supported by findings of fact which are, in turn, supported by substantial evidence." *Id.*

■ The circumstances present in *McGovern*, however, did not require embellishment upon the requirement of Section 704 of the Administrative Agency law that appellate courts review agencies' conclusions to determine whether they are "in accordance with law." While this standard has been described in a number of ways, its essential import is to establish limited appellate review of agency conclusions to ensure that they are adequately supported by competent

factual findings, are free from arbitrary or capricious decision making, and, to the extent relevant, represent a proper exercise of the agency's discretion. *See generally Slawek v. Commonwealth, State Bd. of Medical Educ. & Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991).

■ As previously noted, the PLRB contends that, in this and other cases, the Commonwealth Court has improperly injected a concept of reasonableness into the "in accordance with law" standard. The PLRB is correct that the Commonwealth Court has alluded to reasonableness in its description of the pertinent standard of review; however, the Commonwealth Court has also frequently acknowledged the limited connotation given the term in the context of review of administrative agency adjudications. *See, e.g., Zook v. State Bd. of Dentistry,* 683 A.2d 713, 715 (Pa.Cmwlth.1996) (noting that "[I]t is now well settled that this Court may not substitute its judgment for that of the Board; absent bad faith, fraud, capricious action or abuse of power, we are constrained to affirm the Board's order"); *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 429, 625 A.2d 179, 182 (1993) (noting that this Court in *Slawek* "cautioned [the Commonwealth Court] against inquiring too deeply whether a penalty is reasonable in light of the violation"); *Chester Upland School Dist. v. PLRB,* 110 Pa.Cmwlth. 439, 441–42, 532 A.2d 925, 927 (1987), *appeal denied,* 520 Pa. 619, 554 A.2d 511 (1988). Moreover, while reviewing courts are not free to invoke a concept of reasonableness in order to substitute their judgment for that of an agency, it remains within their purview to review the agency's conclusions to determine "if a reasonable mind might make the same determination based on the evidence before [it]." *Williams v. Commonwealth, State Civil Serv. Comm'n.,* 457 Pa. 470, 473, 327 A.2d 70, 72 (1974). As further discussed below, although the Commonwealth Court did not specifically acknowledge these limitations in its opinion in this case, we find nothing in its disposition to indicate that its review was not appropriately confined.

*Issue Two—Identifiable Community of Interest*

■■■ We further find that the Commonwealth Court properly concluded that the legal conclusion of the PLRB—that there was an identifiable community of interest between the enforcement officers and the licensing analysts—was not reasonable, i.e., not in accordance with law, because it was not supported by substantial evidence. To determine whether employees share an identifiable community of interest, the PLRB and/or court should consider such factors as the type of work performed, educational and skills requirements, pay scales, hours and benefits, working conditions, interchange of employees, grievance procedures, and bargaining history. *See, e.g., School District of the Township of Millcreek, supra; Warren Borough v. International Brotherhood of Electrical Workers, Local No. 1124,* 55 Pa.Cmwlth. 570, 423 A.2d 1117 (1980); *Western Psychiatric Institute, supra; Allegheny General Hospital v. PLRB,* 14 Pa.Cmwlth. 381, 322 A.2d 793 (1974). An identifiable community of interest does not require perfect uniformity in conditions of employment and can exist despite differences in wages, hours, working conditions, or other factors. *See Western Psychiatric Institute, supra.* Here, however, there is no substantial evidence of record to support the PLRB's conclusion that the enforcement officers and the licensing analysts share an identifiable community of interest. Accordingly, we affirm the decision of the Commonwealth Court granting the FOP's Petition for Unit Clarification.