The BERKS/LEHIGH VALLEY COL-
LEGE FACULTY ASSOCIA-
TION, Petitioner,

v.

PENNSYLVANIA LABOR
RELATIONS BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 2000.
Decided Dec. 4, 2000.

Thomas W. Scott, Harrisburg, for peti-
tioner.

John Neurohr, Harrisburg, for respon-
dent.

Katherine M. Allen, State College, for
intervenor, Pennsylvania State University.

Before McGINLEY, and
LEADBETTER, Judges, and
JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Berks/Lehigh Valley College Facul-
ty Association (Association) petitions for
review of the September 22, 1999 final
order of the Pennsylvania Labor Relations
Board (Board) that dismissed the Associa-
tion's exceptions and finalized the Hearing
Examiner's proposed order of dismissal,
which dismissed the Association's petition
for representation seeking certification as
the bargaining representative for the pro-
fessional employees of Berks/Lehigh Val-
ley College (BLVC).  The Association's
primary argument is that the Board erred
by determining that the petitioned-for bar-
gaining unit does not share a distinct com-
munity of interest separate and apart from
other professional employees of Pennsylva-
nia State University (Penn State), so as to
constitute an appropriate bargaining unit

under the provisions of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301. We affirm.

Prior to July 1, 1997, Penn State's Berks and Allentown campuses were two of seventeen two-year undergraduate campuses comprising the Commonwealth Educational System (CES). The primary purpose of these campuses was to prepare students to complete their baccalaureate programs at Penn State's University Park campus.

However, as of July 1, 1997, Penn State's system was redesigned. The CES was abolished and the two-year campuses were reorganized into several four-year colleges. As part of that reorganization, the Berks and Allentown campuses were merged into the newly created BLVC. Penn State employs approximately 200 faculty at BLVC and approximately 5,400 faculty at its various other colleges.

Penn State is a public employer for purposes of collective bargaining under PERA. On December 18, 1997, pursuant to Section 603 of PERA, 43 P.S. § 1101.603, the Association filed a petition for representation with the Board alleging that thirty percent or more of the BLVC faculty wished to be represented by the Association, and that the Association desired to be certified as the bargaining representative for the BLVC faculty. In its petition, the Association named BLVC and Penn State as joint employers.

On January 8, 1998, the Board issued an order and notice scheduling a hearing on the Association's petition. However, on January 15, 1998, Penn State filed a motion to dismiss alleging that BLVC and Penn State are not joint employers of the petitioned-for employees; that a bargaining unit limited to the BLVC faculty is not appropriate; and that the showing of interest submitted with the Association's petition was inadequate.

On March 11, 1998, a hearing was held at which time the Association amended its petition by deleting BLVC as an employer.

Both the Association and Penn State were provided a full opportunity to present testimony, cross-examine witnesses and introduce documentary evidence regarding the appropriateness of the proposed bargaining unit.

On June 5, 1998, the Hearing Examiner issued a decision and order, wherein he made seventeen findings of fact, reviewed the applicable law and determined that in consideration of the factors contained in Section 604(1) of PERA, 43 P.S. § 1101.604(1), a bargaining unit limited to BLVC faculty is inappropriate. Section 604(1) provides:

The board shall determine the appropriateness of a unit which shall be the public employer unit *or a subdivision thereof.* In determining the appropriateness of the unit, the board shall:

(1) Take into consideration but shall not be limited to the following:

(i) public employes must have an identifiable community of interest, and

(ii) the effects of over-fragmentation. (Emphasis added).

The Hearing Examiner reasoned that all Penn State faculty, including those at BLVC, share the same functions of teaching, research and community service, and enjoy the same benefits. Moreover, the Hearing Examiner recognized that although BLVC developed some of its own policies and regulations concerning the terms and conditions of BLVC faculty employment, they remain subject to the overarching policies of Penn State, which apply to all Penn State faculty. Specifically, the Hearing Examiner stated:

Although the Association established that some elements of the employment relationship for the faculty working at BLVC are unique and that BLVC controls its own destiny to a certain degree now that it offers four-year degree programs, see findings of fact 7–9, the record shows that a multitude of employment conditions for them and for the faculty working at other colleges of the

University are the same and that the University still exercises substantial control over all of its colleges, including BLVC. See findings of fact 4, 6, 9–15. Notably, the faculty at all of the University's colleges, including BLVC, engage in teaching, research and public service, are covered by a wide variety of University policies, including ones dealing with fringe benefits, and are represented on the University's faculty senate. *The petitioned-for unit does not include all such employes, so overfragmentation will result if the petition is not amended to broaden the unit.*

Hearing Examiner's June 5, 1998 Decision and Order, pp. 5–6 (emphasis added).

In his order, the Hearing Examiner afforded the Association twenty days either to amend its petition in conformity with the decision or to request permission to withdraw the petition. However, the Association did neither. On June 29, 1998, the Hearing Examiner filed a proposed order of dismissal directing that in the absence of any exceptions, the decision and order shall become absolute and final. On July 2, 1998, the Association filed timely exceptions.

On September 22, 1999, the Board issued a final order dismissing the Association's exceptions to the proposed order of dismissal and making that order absolute and final. In its decision, the Board determined that the Hearing Examiner's findings of fact were supported by substantial evidence and that the Hearing Examiner

correctly concluded that the petitioned-for bargaining unit, limited to the faculty at BLVC, is not an appropriate unit. The Board rejected the Association's position that this Court's decisions in *Association of Pennsylvania State Coll. and Univ. Faculties v. Pennsylvania Labor Relations Board,* 34 Pa.Cmwlth. 239, 383 A.2d 243 (1978) (hereinafter, "APSCUF") and *Fraternal Order of Police, Conference of Pennsylvania Liquor Control Board Lodges v. Pennsylvania Labor Relations Board,* 695 A.2d 926 (1997), *aff'd,* 557 Pa. 586, 735 A.2d 96 (1999), where it was determined that the employees in the proposed bargaining units did not have an identifiable community of interest, were applicable to the present case.[1] The Association appealed to this Court.

■ This Court's review of the Board's bargaining unit determination under Section 604(1) of PERA is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether the legal conclusions drawn from those facts are reasonable and not arbitrary or capricious. *Washington County v. Pennsylvania Labor Relations Board,* 149 Pa.Cmwlth. 603, 613 A.2d 670 (1992).[2] "In reviewing the Board's decision, this Court must rely on the Board's expertise in the area of public labor relations to weigh and determine the facts." *Id.* at 672.

Before this Court, the Association contends that the Board erred by concluding that the petitioned-for unit does not share

---

**1.** In *APSCUF,* this Court determined that despite a similarity in job function, non-faculty administrators did not share an identifiable community of interest with faculty administrators because of significant differences in requirements for their jobs, requirements for advancements, as well as differences in the rights of these two groups at the institutions were they worked.

In *Fraternal Order of Police,* this Court determined that liquor control enforcement officers, who investigated gambling, underage drinking and other crimes involving licensed establishments, and were issued raid gear, including guns and bulletproof vests, did not

share an identifiable community of interest with licensing analysts, who performed regulatory work, including auditing and did not engage in criminal investigations, carry firearms or make arrests.

**2.** *See also Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 557 Pa. 586, 735 A.2d 96 (1999), where the Supreme Court, *inter alia,* reaffirmed that this scope of review was appropriate and rejected the Board's argument that this Court's review is limited to a determination of whether the necessary findings of fact are supported by substantial evidence.

a distinct community of interest apart from other Penn State faculty, so as to constitute an appropriate bargaining unit under Section 604 of PERA. First, the Association asserts that the Board failed to make several necessary and material findings of fact regarding the broad scope of BLVC's autonomy over its operations, and that the findings of fact that were made do not accurately reflect the uncontroverted evidence of record. Second, the Association asserts that the Board erred by steadfastly adhering to its "broad-based bargaining unit policy" and too narrowly interpreting the applicable appellate precedent. In the same vein, the Association further asserts that the Board's decision is inconsistent with decisions of the National Labor Relations Board (NLRB) governing unit determinations involving multilocation employers.

## I.

█ The Association's first argument is that the Board's findings do not reflect the uncontroverted record evidence taken as a whole and accordingly, are not supported by substantial evidence. However, after reviewing the Board's decision and the evidence, this Court disagrees. The Board adopted the Hearing Examiner's findings of fact in full and each contains adequate references to supporting evidence in the record. Nonetheless, the primary thrust of the Association's argument is that the Board failed to make sufficient findings regarding the actual scope of autonomy exercised by BLVC and that such autonomy requires the certification of a separate BLVC faculty unit.

Contrary to the Association's assertions, in Findings of Fact Nos. 7–9, the Hearing Examiner did make specific findings regarding the scope of the Board's autonomy. Further, in his discussion, the Hearing Examiner acknowledged that the Association established that "some elements of the employment relationship for the faculty working at BLVC are unique and that BLVC controls its own destiny

to a certain degree now that it offers four-year programs...." June 5, 1998 Decision and Order, p. 5.

Specifically, in Finding of Fact No. 7, the Board found that BLVC devised its own strategic plans for, *inter alia,* developing its academic programs, engaging in ventures with other institutions, securing funding to pay for faculty salaries, student scholarships, sabbatical leaves and new programs, and enticing more students to enroll. In Finding of Fact No. 8, the Board found that BLVC established its own faculty senate, which advises the BLVC dean concerning BLVC matters. In Finding of Fact No. 9, the Board found that BLVC has a tenure review process whereby BLVC faculty on the tenure track face review by the BLVC dean and other faculty members.

Nevertheless, in accord with Section 604(1) of PERA, the Board's essential findings of fact concern the issues of whether the petitioned-for unit has a distinct identifiable community of interest and whether the certification of that unit will result in over-fragmentation. In *Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 557 Pa. 586, 735 A.2d 96 (1999), the Supreme Court, in affirming this Court's decision, stated that in determining whether employees share an identifiable community of interest, the Board must consider such factors as the type of work performed, working conditions, pay scales, hours and benefits, grievance procedures and bargaining history. "An identifiable community of interest does not require perfect uniformity in conditions of employment and can exist despite differences in wages, hours, working conditions, or other factors." *Id.* at 594, 735 A.2d at 100.

In Findings of Fact Nos. 4, 10–15, the Board made findings indicating that the BLVC faculty clearly share an identifiable community of interest with faculty at other Penn State colleges. In Findings of Fact No. 4 and 16, the Board found that Penn State's 5600 faculty are engaged in teach-

ing, research and public service. *See* N.T. 124–125.

In Finding of Fact No. 10, the Board found that Penn State has personnel policies that apply to all of its faculty, including those at BLVC, who are appointed without an ending time or with a fixed term of at least six months. These policies cover matters such as leaves without pay, sabbatical leaves, benefits, promotion and tenure, educational privileges, grants-in-aid for dependents, effective dates for pay changes, academic freedom, moving expenses, private consulting practices, and conflicts on interest. Penn State also provides all its faculty with workers' compensation coverage and pension coverage under the State Employes Retirement System. *See* N.T., Penn State's Ex. Nos. 3 (Penn State University Human Resources Policies) and 4 (Penn State University Promotion and Tenure Procedures and Regulations).

The Board further found that Penn State has a faculty senate on which faculty from all of its colleges, including BLVC are represented. Finding of Fact No. 11, N.T. 54. The University Park faculty senate and the provost must approve the academic degree programs offered by each college. Finding of Fact No. 12; N.T. 102–103. For each college, including BLVC, Penn State must approve the construction of new buildings, provide a base allocation for operating expenses, coordinate enrollments, prescribe core curriculum requirements and set guidelines for merit increases in pay. Finding of Fact No. 13; N.T. 42–44, 65–66, 73–74, 110–111.

In addition, the provost reviews the budget for each college to ensure that the anticipated revenues cover anticipated expenses. Finding of Fact No. 14; N.T. 46. The provost also approves sabbatical leaves. Finding of Fact No. 15; N.T. 66–67.

In view of these findings of fact, which are supported by substantial evidence, this Court concludes that the Board did not err in determining that for purposes of Section 604 of PERA, the 200 faculty members at BLVC share an identifiable community of interest with the other 5400 Penn State faculty members employed at other colleges. As discussed above, all 5600 Penn State faculty members engage in teaching, research and public service and are covered by a wide variety of Penn State policies.

As a result, despite the autonomy of BLVC in several areas of its operations, whether or not accurately reflected in its entirety by the Board's findings of fact, the Board's determination that the 200 BLVC faculty share an identifiable community of interest with the other 5400 Penn State faculty is supported by the evidence of record. Therefore, the Board's determination that BLVC faculty do not have a community of interest separate and distinct from the remainder of the Penn State faculty so as to justify certification of the Association as a separate bargaining unit, is likewise supported by substantial evidence and in accord with the applicable law.

## II(a).

The Association's second argument is that the Board failed or refused to follow relevant appellate precedent in determining the appropriateness of the petitioned-for unit. To support its position, the Association cites this Court's decisions in *Allegheny Gen. Hosp. v. Pennsylvania Labor Relations Board,* 14 Pa.Cmwlth. 381, 322 A.2d 793 (1974); *Commonwealth v. Pennsylvania Labor Relations Board (Capitol Police),* 64 Pa.Cmwlth.525, 441 A.2d 470 (1982), *aff'd in part and rev'd in part,* 502 Pa. 7, 463 A.2d 409 (1983); *APSCUF;* and *Fraternal Order of Police.*

In *Allegheny Gen. Hosp.,* this Court recognized that hospital maintenance employees do not share a community of interest with housekeeping employees. In reaching that decision, the Court noted that the two groups perform different functions, have different skill requirements and pay

scales, have no interchange of employees, and that each group has its own supervisory structure.

Unlike the situation in *Allegheny Gen. Hosp.*, the Board here made findings of fact indicating that the BLVC faculty perform the same functions as faculty at the other Penn State colleges, and that all Penn State faculty are, for the most part, subject to the same employment policies and enjoy the same benefits. As discussed above, these findings are supported by substantial evidence. Therefore, the factual situation in the present case is distinguishable from that in *Allegheny Gen. Hosp.*

Nonetheless, citing this Court's decisions in *APSCUF* and *Capitol Police*, the Association claims that similarity in job function between BLVC faculty and faculty at other Penn State colleges is neither a sufficient nor controlling basis for establishing a community of interest. As noted above, in *APSCUF*, this Court determined that despite a similarity in job function, non-faculty administrators did not share an identifiable community of interest with faculty administrators because of significant differences in requirements for their jobs, requirements for advancements, as well as differences in the rights of these two groups at the institutions where they worked.

In contrast to the situation in *APSCUF*, the BLVC faculty in the present case share similarities with faculty at other Penn State colleges as to requirements for their jobs and requirements for advancements. In addition, they have similar rights at the respective institutions where they work. Therefore, the Association's reliance on *APSCUF* is misplaced.

The Association next cites *Capitol Police*, where the Commonwealth argued that police officers, although employed by ten different Commonwealth agencies, should be represented by one statewide bargaining unit. The Board, however, concluded that police officers employed by the Capitol Police in Harrisburg and at state buildings in Philadelphia and Pittsburgh could be represented by a separate bargaining unit. In upholding the Board's decision, the Court noted that the Capitol Police do not have supervisory authority over police officers for other Commonwealth agencies and that each agency promulgates its own policies.

In contrast, Penn State exercises supervisory authority and promulgates employment policies and regulations applicable to all 5600 faculty, including those at BLVC. As a result, *Capitol Police* is also readily distinguishable from the present case.

Likewise, in this Court's decision in *Fraternal Order of Police*, it was determined that liquor control enforcement officers, who investigated gambling, underage drinking and other crimes involving licensed establishments, carried weapons and went on raids, did not share an identifiable community of interest with licensing analysts, who performed regulatory work, including auditing. The licensing analysts did not engage in criminal investigations, carry firearms or make arrests.

In *Fraternal Order of Police*, the Court also recognized that the two groups were employed by different agencies, with different policies and regulations. The Pennsylvania State Police employed the officers and the Pennsylvania Liquor Control Board employed the licensing analysts. Neither agency had supervisory authority over the other. As such, *Fraternal Order of Police* is also distinguishable from the case *sub judice*. Here, all Penn State faculty perform similar teaching and research functions and all are subject to Penn State's employment polices and regulations.

Moreover, in affirming this Court's decision in *Fraternal Order of Police*, the Supreme Court recognized that in determining "whether employees share an identifiable community of interest, the PLRB and/or court should consider such factors as the type of work performed, educational and skills requirements, pay scales,

hours and benefits, working conditions, interchange of employees, grievance procedures, and bargaining history." 557 Pa. at 594, 735 A.2d at 100. As discussed above, when these factors are considered, all 5600 Penn State faculty, including those at BLVC, share an identifiable community of interest.

Nevertheless, the Association maintains that this Court's decisions in *Capitol Police* and *Fraternal Order of Police* require that the Board abandon its "broad-based bargaining unit policy" and concerns about over-fragmentation. In rejecting this argument, the Board correctly notes that this Court's decision in *Capitol Police* concerned policemen, who are covered by the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10, more commonly known as "Act 111." Pursuant to Section 301(2) of PERA, 43 P.S. § 1101.301(2), policemen covered under Act 111 are exempt from PERA coverage. As such, the over-fragmentation concerns in Section 604(1) of PERA are inapplicable to Act 111 bargaining units.

Moreover, in *Fraternal Order of Police*, although PERA rather than Act 111 covered the employees at issue, the two groups were employed by different Commonwealth agencies, with different policies and regulations. Neither agency had supervisory authority over the other. Because the Court in *Fraternal Order of Police* determined that no community of interest existed between the parties, it thus stated that effects of over-fragmentation need not be considered.

As discussed above, unlike the two groups in *Fraternal Order of Police*, all

5600 Penn State faculty, including the 200 at BLVC, share a community of interest. As such, the Board properly considered the effects of over-fragmentation as required by Section 604(1)(ii) of PERA, 43 P.S. § 1101.604(1)(ii). In view of the foregoing, this Court concludes that the Board's decision does not conflict with the appellate cases cited by the Association.[3]

### II(b).

The Association also contends that the Board's decision is inconsistent with well-established NLRB precedent governing unit determinations involving multilocation employers. The Association asserts that in NLRB cases, the general rule is that a single-plant unit is presumptively appropriate unless it is established that the single plant has been effectively merged into a more comprehensive unit so as to have lost its individual identity.

To support its position, the Association cites *In re Appeal of Cumberland Valley Sch. Dist.*, 483 Pa. 134, 394 A.2d 946 (1978). In that case, the Supreme Court reasoned that where there is no difference in policy between the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169, and PERA, federal law may be persuasive and Pennsylvania courts may look to federal decisions for guidance.

As the Board notes, however, such is not the case here. Section 604(1) of PERA requires that the Board consider the effects of over-fragmentation in determining whether a petitioned-for bargaining unit is appropriate. No such similar provision exists in the NLRA. "Further, we know of no authority which would require the Board, deciding questions of state law concerning

---

3. The Association also cites the Board's decision in *Community Coll. of Philadelphia v. Pennsylvania Labor Relations Board*, 10 PPER ¶ 10020 (Order and Notice of Pre Election Conference, 1978), *aff'd*, 10 PPER ¶ 10123 (Final Order, 1978), *aff'd* 60 Pa.Cmwlth. 629, 432 A.2d 637 (1981), *aff'd*, 496 Pa. 415, 437 A.2d 942 (1981). In that case, the Board certified separate units for full-time faculty and part-time instructors and visiting lecturers. The Board found significant differences

between the two groups in compensation and working conditions. The Board also found a lack of participation on the part of the part-time instructors in college governance and that tenure was not available to the part-time instructors.

In the present case, no such differences exist between the BLVC faculty and other Penn State faculty. As a result, *Community Coll. of Philadelphia* is distinguishable.

PERA, to blindly follow decisions of the NLRB which involve questions purely of federal law." *American Fed'n of State, County and Mun. Employees v. Pennsylvania Labor Relations Board*, 108 Pa. Cmwlth. 482, 529 A.2d 1188, 1190 (1987).

■ Consequently, because Section 604 of PERA requires that the Board consider the effects of over-fragmentation in determining whether a bargaining unit is appropriate, the NLRB decisions cited by the Association are inapplicable to the case at bar. Hence, the Board did not err by failing to consider those decisions as applicable precedent.

In view of the foregoing, the order of the Board is affirmed.

## ORDER

AND NOW, this 4th day of December, 2000, the September 22, 1999 order of the Pennsylvania Labor Relations Board is hereby affirmed.