Allegheny General Hospital, Appellant, *v.* The Pennsylvania Labor Relations Board, Appellee.

Argued May 7, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*A. C. Coney, Jr.,* with him *Bruce Wiegand* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellant.

*Raymond W. Cromer,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, *Francis A. Zulli,* Assistant Attorney General, and *James L. Crawford,* Assistant Attorney General, for appellee.

Opinion Per Curiam, July 23, 1974:

We have carefully read the record and considered the contentions advanced by the Allegheny General Hospital, appellant here. We conclude that the court below not only rendered the correct decision but adequately

stated the reasons for that decision in its opinion. Accordingly, we hereby affirm on the opinion of Judge Ross for the court below and, because it has not been heretofore reported, we set it forth in full.

Order affirmed.

BY THE COURT BELOW:

"Allegheny General Hospital has appealed from the order of the Pennsylvania Labor Relations Board entered November 6, 1972, in which the Board certified the International Union of Operating Engineers, Local 95-95A, AFL-CIO, as the exclusive representative of the approximately 55 maintenance employees of the hospital for the purpose of collecive bargaining with respect to wages, hours and terms and conditions of employment.

"The union had petitioned the board on April 6, 1971, alleging its right to represent thirty (30) percent or more of certain hospital employees. After hearing on October 15 and 20, 1971, the board on May 23, 1972, issued an order and notice directing an election by secret ballot on June 15, 1972, in the subdivision of hospital employees comprised of maintenance workers, and excluding management level employees, supervisors, first level supervisors, confidential employees and guards as defined in the Public Employe Relations Act of June 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq.

"After the election, the board issued a nisi order certifying the union as the exclusive representative of the hospital maintenance staff. Exceptions to the nisi order filed by the hospital were argued before the board and dismissed by the order from which this appeal was taken.

"The hospital contests the appropriateness and legality of the certified unit, which consists of 26 job classifications in the hospital maintenance department, and asserts that the appropriate and legal unit is one

consisting of 37 classifications in the areas of maintenance and housekeeping. It is contended that the order of the board violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, requires action by the employer in violation of civil rights statutes, denies equal opportunity to persons working in the 11 excluded occupations, and is not in conformity with the Public Employe Relations Act of June 23, 1970, *supra*.

"The scope of review by this Court of the order of the board is found in Section 1502 of the Public Employe Relations Act, *supra*, 43 P.S. §1101.1502, which provides that the Court may enter a decree enforcing, modifying and enforcing as so modified or setting aside, in whole or in part, the order of the board. It further provides that findings of fact by the board are conclusive if supported by substantial and legally credible evidence.

"Under the similar Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, §9, 43 P.S. §211.9, it has been held that this Court may not substitute its judgment concerning an appropriate bargaining unit but may only determine whether the evidence in support of the board's decision is substantial and legally credible and whether the board's conclusions are unreasonable, arbitrary or illegal: Pennsylvania Labor Relations Board v. Butz, 411 Pa. 360, 374-5.

"At the hearing below the hospital adduced testimony showing that its proposed unit would include 32 classifications in its maintenance department and 5 in the housekeeping department. The board accepted the union proposal excluding 6 of the maintenance department classifications and all but [sic] 5 of the housekeeping department.

"18 of the 37 classifications (housekeeping and maintenance) are normally considered crafts and skills and were placed in the certified unit (carpenter, electrician,

painter, plumber, plasterer, sheet metal worker, elevator repairman, refrigeration repairman, machinist, operating engineer).

"Placed in the unit were 4 positions (fireman, storeroom attendant, lead mechanic, mechanic) out of 13 skilled or unskilled positions (fireman, storeroom attendant, lead mechanic, mechanic, draftsman, secretary, chauffeur, clerk of maintenance department, custodian, seamstress, clerk of housekeeping department).

"Of the unskilled jobs, 4 (mechanic, laborer, compactor operator, and wall washer) of 6 (mechanic, laborer, compactor operator, wall washer, custodian of maintenance department and custodian of housekeeping department) were placed in the certified unit.

"Hospital witnesses testified that maintenance and housekeeping employees have the common goal of maintaining the total hospital environment by assuring that the plant and equipment are clean and in working order. They sometimes work together on projects, and housekeeping reports to maintenance the need for repairs.

"There was also testimony that the only opportunity for a housekeeping employee to advance is to move into another department, that only 4% to 5% of maintenance employees were female and only 3% of a minority group, while the housekeeping department is 75% female and 25% minority. The board order excluded the 6 classifications in which all maintenance females work.

"The hospital's evidence also indicated that minority group workers enter through the housekeeping department, that their promotional opportunities lie in maintenance and attempted to show that the bargaining unit might constitute a barrier to their promotion.

"The board rejected the hospital argument. It approved a unit of 61 employees and rejected the hospital unit of 162 employees (70 maintenance, 92 housekeep-

ing). The hospital has a total work force of over 1950 employees.

"The board found that all but 4 maintenance workers earn in excess of the top hourly rate of housekeeping workers; that working hours, lunch times, and breaks are different; that some tasks are performed cooperatively by the departments; that housekeeping has a larger proportion of women; that employees sometimes move from housekeeping to maintenance; that the department employees wear different uniforms, have separate locker facilities, report at different places, have different lower level grievance procedures and the same high level grievance procedures; that the departments are housed in the same part of the hospital and have the same fringe benefits.

"The board further found that the union's proposed unit of 26 classifications had an identifiable community of interest, *i.e.*, the same department, the same type of work, the same uniforms, lockers, shower facilities, the same hours and shifts, and that it ranges from craftsmen and licensed engineers to repairmen, handymen, and laborers such as compactor operators and wall washers.

"The board excluded secretaries, clerks, draftsmen, chauffeurs, and custodians since they did not come within the defined community of interest.

"The board recognized that the separate unit might discourage minority and female aspirations and that separate seniority might be a problem, but that these were not existing problems at the time of the election. It was suggested that anyone aggrieved as time passes had a remedy.

"The board also refused to find that the act, equal opportunity and civil rights statutes, and the equal protection clause of the Fourteenth Amendment of the United States Constitution had been violated. It held that the unit did not foreclose advancement of minori-

ties nor preclude the employer from protecting them. Advancement opportunity could be protected by plant-wide seniority.

"The hospital objects to specific exclusions of job categories from the certified unit as well as to the general exclusion of the housekeeping department from the unit.

"The Public Employes Relation Act of July 23, 1970, *supra*, §604, 43 P.S §.1101.604 provides that the board must determine the appropriateness of the unit petitioned for by the union and, in addition to other factors, take into consideration whether the employees have an identifiable community of interest. It must avoid over-fragmentation.

"In regard to the separation of housekeeping employees from maintenance employees, it has long been held that maintenance employees of plants or institutions may be granted separate representation: Gerber Products Company, 162 NLRB No. 14, 63 LRRM 1109; Animal Trap Company of America, 107 NLRB No. 58, 33 LRRM 1109; Aluminum Foils, Inc., 94 NLRB 806, 28 LRRM 1109; Miami Inspiration Hospital 175 NLRB No. 99, 71 LRRM 1013; Magee Women's Hospital, No. PERA-R-175-W; Hahnemann Medical College and Hospital, No. PERA-R-28-E. The reasoning of the boards has been that maintenance workers tend to be a multi-craft group with greater skills and interests different from other groups of employees. All maintenance workers need not possess skilled craft status but they must belong to an identifiable group with distinct functions and duties and interests different from other employees.

"In the instant case the board properly considered the following factors in rejecting the inclusion of housekeeping employees with maintenance workers: the employees' skills, their duties, areas of work, working conditions, interchange of employees, supervision, grievance

procedures, hours of work, trade requirements, pay scales, and employee desires.

"The housekeeping department employees have a community of interest in cleaning. They mop, sweep, vacuum, wax and change linen. Most housekeeping workers are custodians except for two clerks. They are unskilled, need no special education nor manual dexterity. Their work is routine without much individual responsibility, repetitive and scheduled.

"Maintenance employees have a community of interest in various hospital engineering and repair services utilizing carpenters, electricians, painters, plumbers, plasterers, sheet metal workers, elevator repairmen, machinists, operating engineers, firemen, and mechanics all of whom possess skills related to their craft and some of whom must be registered or licensed by appropriate governmental agencies. Their work requires a high degree of individual judgment, responsibility, and/or manual dexterity and a minimum of supervision. Although it involves some routine tasks, it also entails repair and servicing of hospital equipment which is neither routine nor scheduled.

"The work areas of each department create no community of interest between maintenance and housekeeping employees. Housekeeping cleans and re-cleans the hospital routinely, section by section. Maintenance works at various hospital locations as a need arises. The mere fact housekeeping and maintenance on occasion coordinate their services is not enough to find a community of interest, for there is little, if any, interaction between the two departments.

"The working conditions of housekeeping and maintenance have no community of interest. Maintenance employees work out of the hospital area in which their shop is located; they have locker and shower facilities separate from other employees, wear a uniform different from housekeeping uniforms.

"Housekeeping and maintenance do not interchange employees. Any request by one department for work by the other is independently evaluated to determine its necessity.

"Each department has its own supervisory structure. Maintenance workers are subject to direction by a director and 3 supervisors. Housekeeping workers are under the supervision of an executive housekeeper, his assistant, and 5 supervisors.

"The maintenance department has its own departmental grievance procedure at the lower level separate from the lower level grievance procedure of housekeeping.

"Each department works different hours. Maintenance workers begin one-half hour later than housekeeping works and work one-half hour less per day.

"The pay scales of maintenance workers are generally in excess of those of housekeeping workers. The pay scale of maintenance employees ranges from $4.47 per hour to $2.64 per hour, the latter being paid to wall washers and compactor operators. The pay range of housekeeping employees is from $2.85 per hour to $2.64 per hour.

"Finally, the desires of the maintenance employees in favor of the unit have been expressed to the board. No testimony was offered to indicate the housekeeping employees had any desire to be represented by the union here involved.

"Although the hospital negates any community of interest on the part of wall washers and compactor operators with the maintenance group, it is objecting to its own classification. They are already in the maintenance department. They have a community of interest in maintenance areas of work, working conditions, interchange of employees, supervision, grievance procedures, hours, pay scales, and expressed employee de-

sires. This is enough to find their inclusion not arbitrary.

"Neither did the board act capriciously, as the hospital asserts, in including the unskilled positions of fireman, storeroom attendant, lead mechanic and mechanic A in the unit. These employees are already in the maintenance department with the community of interest enumerated above for the wall washers and compactor operators.

"Contrary to the hospital's contention, the board's exclusion of white collar jobs, chauffeur and custodian B was supported by credible, substantial evidence and is a reasonable conclusion which this Court will not overturn. Consideration of the duties and working conditions of these employees justified their exclusion on the ground no community of interest exists between them and other maintenance workers. The chauffeur drives. He does not repair or maintain, is skilled only in driving and supervised outside the department. Custodian B does housekeeping work in the maintenance department. His duties, job description and pay scale are identical to housekeeping's Custodian B. The white collar workers are clerks and work different hours from maintenance workers. They do office work at a desk and their interests are allied with other like workers in the hospital.

" 'It is not the duty of a court on review to substitute its judgment concerning what is the appropriate bargaining unit for that of the Board, but only to determine whether the evidence in support of the Board's decision is substantial and legally credible, and whether the Board's conclusions are unreasonable, arbitrary or illegal': Pennsylvania Labor Relations Board v. Butz, *supra,* 374-5.

"Credible evidence supports the conclusions of the board as to the bargaining unit, and the conclusions are not unreasonable or arbitrary.

"Are the conclusions of the board violative of equal opportunity or civil rights legislation or the equal protection clause of the Fourteenth Amendment of the United States Constitution?

"The hospital contends that the certification of the maintenance unit would discourage job progression between the housekeeping and maintenance departments and violate the equal protection clause of the Federal Constitution. The violation would occur, it asserts, because many women and minority group employees enter hospital employment through the housekeeping department. With the separation of the unit from housekeeping, the hospital contends a barrier to promotion would be created.

"The testimony before the board showed no pattern of movement from housekeeping to higher maintenance positions but rather only a potential for such. The strongest factor militating against movement into higher grade positions is not certification of the bargaining unit but the hospital policy of separate seniority provisions.

"It is, of course possible that a labor agreement with the unit might provide for departmental seniority, but the employer may protect the housekeeping department employees' mobility by insisting on plant-wide seniority. Department seniority is not in and of itself discriminatory since all nondepartment employees, regardless of sex or race, are thereby excluded. The hospital, however, is not bound to agree to such exclusion.

"There is no union control of employment eligibility at the hospital, and the employer has the means to remedy any grievance which might accrue by reason of its own hiring practices which have placed minority and female employees primarily in housekeeping.

"The unit certified is not based solely on sex or race of employees. Rather it is based on the community of interest of the employees in the maintenance depart-

ment. A classification based on community of interest is reasonable and therefore does not violate the Fourteenth Amendment or civil rights statutes. Without a community of interest, no basis exists to bargain collectively for wages, hours and other terms and conditions of employment. Units balanced in terms of sex or minority composition do not necessarily share the community of interest in wages, hours, and working conditions needed for successful bargaining.

"The certification in no way regulates the hospital's hiring practices and its obligation to comply with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 (e) et seq. or the Pennsylvania Human Relations Act, P. L. 744, 43 P.S. §951 et seq. or Executive Order 11246, 3 C.F.R. 402, 42 U.S.C. §2000 (e). What the hospital complains of is its own act not that of the board or the proposed unit.

"The National Labor Relations Board has found that a unit based on race to be inappropriate, and employees may not be excluded from a unit because of racial considerations: Port Richmond Elevator Co., Inc., 66 LRRM 1117, 167 NLRB No. 90; New Deal Cab Co., Inc., 62 LRRM 1356, 159 NLRB No. 111; Land Title and Guarantee Trust Co., 78 LRRM 1500, 194 NLRB No. 29; Aetna Iron and Steel Co., 35 NLRB 488 and 35 NLRB 136.

"Examination of the proceedings before the board indicates to the Court that there was sufficient, credible evidence to support the order of the board and its decision was not arbitrary or unreasonable. Neither has it been shown to be violative of civil rights statutes or the Public Employe Relations Act or the Federal Constitution.

"The appeal of Allegheny General Hospital will be dismissed."

President Judge BOWMAN dissents.